UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CRISTIAN DAVID ERAZO REALPE, | CASE NO. 2:26-cv-02489-DGE |
| Petitioner, | ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABAEAS CORPUS (DKT. NO. 1) |
| v. | |
| MARKWAYNE MULLIN et al., | |
| Respondents. | |

This matter is before the Court on Petitioner Cristian David Erazo Realpe's petition for writ of habeas corpus (Dkt. No. 1).  For the reasons identified herein, Petitioner's petition is DENIED.

## I     BACKGROUND

Petitioner is a native and citizen of Colombia.  (Dkt. No. 5-3 at 2.)  Petitioner entered the United States at John F. Kennedy International Airport in New York, New York on October 9, 2022.  (*Id*.)  Petitioner entered the United States on a B2 Visitor for Pleasure visa.  (*Id*.)

ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABAEAS CORPUS (DKT. NO. 1) - 1

Petitioner's B2 visa permitted him to remain in the United States for six months.  (Dkt. No. 6 at 2.)  Petitioner "remained in the country for longer than permitted."  (*Id*.)

On January 18, 2024, Petitioner filed an affirmative Form I-589 for Asylum and Withholding of Removal with United States Citizenship and Immigration Services.  (*Id*.)  Petitioner was arrested in 2024 and ultimately convicted for reckless driving.  (Dkt. No. 5-4 at 3–4.)[1] [2]

On June 5, 2026, Respondents issued a warrant for Petitioner's arrest pursuant to sections §§ 236 and 287 of the Immigration and Nationality Act ("INA") asserting "biometric confirmation of the subject's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law."  (Dkt. No. 5-2 at 2.)[3]

On June 9, 2026, Petitioner attended a scheduled interview regarding his application for asylum and relief from removal.  (Dkt. No. 6 at 2.)  Three deportation officers identified Petitioner and informed him that he was "under arrest for violating immigration law and took him into custody without resistance."  (Dkt. No. 5-3 at 3.)

---

[1] The exact date of Petitioner's arrest and conviction are unclear.  Petitioner was identified as being arrested for driving under the influence and reckless driving on May 8, 2024.  (*Id*. at 3–4.)  However, Petitioner's sentencing is identified as occuring on April 24, 2024—*before* the arrest allegedly took place.  (Dkt. No. 6 at 2.)

[2] Petitioner was also arrested in March 2024 for domestic abuse strangulation, fourth degree assault, and inference with making a police report.  (Dkt. No. 5-4 at 6–7.)  These charges were later dismissed.  (*Id*.)

[3] At various points, Respondents' documents relating to Petitioner appear to refer to him by the name Pineda.  (*See* Dkt. No. 5-3 at 3.)

ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABAEAS CORPUS (DKT. NO. 1) - 2

Petitioner was also served a Notice to Appear ("NTA") under section § 240 of the INA on June 9, 2026.  (Dkt. No. 5-1.)  The Department of Homeland Security ("DHS") identified that Petitioner had "been admitted to the United States," but charged him as removable under section § 237(a)(1)(B) of the INA for remaining "in the United States for a time longer than permitted, in violation of [the INA] or any other law of the United States."  (*Id*. at 2.)

Petitioner has been detained at Northwest Immigration and Customs Processing Center ("NWIPC") in Tacoma, Washington since June 9, 2026.  Petitioner appeared with counsel at a master calendar hearing in Tacoma Immigration Court on July 21, 2026.  (Dkt. No. 6 at 2.)  "Petitioner admitted the allegations in the NTA and conceded the charge of removability."  (*Id*.)  Petitioner's next master calendar hearing is scheduled for August 18, 2026.  (*Id*. at 3.)  Petitioner has not filed a Bond Redetermination Request.  (*Id*.)

Petitioner filed a petition for writ of habeas corpus on July 14, 2026.  (Dkt. No. 1.)  Petitioner asserts his detention is unlawful under the Due Process Clause of the Fifth Amendment.  (*Id*. at 6–9.)  Petitioner further argues immediate release is the proper remedy but seeks a Court-ordered bond hearing in the alternative.  (*Id*. at 10.)

Respondents object to Petitioner's petition, arguing that his situation is distinguishable from others where release has been granted because he "was neither in active removal proceedings nor subject to conditions of release from the date of his visa expiration in April 2023 until his June 2026 arrest."  (Dkt. No. 4 at 5.)  Respondents assert "the only reason Petitioner has not had a bond redetermination hearing . . . is because *he* has not requested one."  (*Id*. at 6.)  As a result, Respondents argue, "[h]is decision not to pursue the procedures already available to him does not transform his detention into a constitutional violation or justify habeas relief."  (*Id*.)

This matter is fully briefed.  (*See* Dkt. No. 7.)

## II    LEGAL STANDARD

### A.  Writ of habeas corpus

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2).  To succeed on his habeas petition, Petitioner "must show [he] is in custody in violation of the Constitution or laws or treaties of the United States." *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241). Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'" *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

### B.  Fifth Amendment Due Process Clause

The Due Process Clause protects against deprivation of liberty without proper process, and this protection extends to deportation proceedings.  U.S. Const. amend. V. ("No person shall be . . . deprived of life, liberty, or property, without due process of law[.]"); *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

The traditional test for evaluating due process claims set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).  "The fundamental requirement of due process is the opportunity to be heard 'at a

meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). *Mathews* employs a three-factor test looking at (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest." *Mathews*, 424 U.S. at 335.

### III    ANALYSIS

**A. Petitioner's detention does not violate his Due Process rights**

Petitioner is undisputedly being detained pursuant to 8 U.S.C. § 1226(a). (Dkt. No. 4 at 1.) Petitioner asserts that his detention violates the Due Process Clause of the Fifth Amendment because: (1) his "interest in freedom from physical confinement is fundamental and entitled to the highest level of constitutional protection"; (2) he "has been detained since June 3, 2026, without notice, without an explanation sufficient to allow meaningful contestation, and without an opportunity to challenge continued custody before a neutral adjudicator"; and (3) his request for a hearing to "justify continued detention before a neutral decisionmaker imposes only a minimal administrative burden while significantly reducing the risk that an individual who presents neither a danger nor flight risk remains unnecessarily deprived of liberty." (Dkt. No. 1 at 9.)

The first *Matthews* factor weighs in Petitioner's favor as the Court agrees Petitioner maintains a liberty interest in his continued freedom.

Notwithstanding, the Court concludes the risk of erroneous deprivation is mitigated through the procedures available to Petitioner. Specifically, Petitioner is eligible for a bond redetermination hearing, a point Respondents concede. Petitioner, however, has made the choice

ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABAEAS CORPUS (DKT. NO. 1) - 5

not to avail himself of such hearing as he has chosen not to request such hearing. Under the facts of this case, where Petitioner was not previously detained and then released, the value of additional or substitute procedural safeguards is marginal at best because Petitioner need only request a bond redetermination hearing to schedule one. Thus, the second *Matthews* factor weighs in favor of Respondents.[4]

Regarding the third *Matthews* factor, Respondents have an interest in ensuring a noncitizen appears at future immigration proceedings and that a noncitizen does not pose a danger to the community. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). This factor weighs in Respondents' favor.

Accordingly, Petitioner fails to establish that, under the circumstances presented, his Petitioner's due process rights have been violated.[5]

**B. The Court will not order Petitioner's bond hearing**

Petitioner also asserts that rather than having to request a bond determination hearing, the Court should order he be given a bond hearing. (Dkt. No. 1 at 11–12.) Respondents argue the

---

[4] To the extent Petitioner argues he should have been provided a pre-deprivation hearing, the decisions Petitioner cites to support this position involve individuals who were detained, released, and then re-detained without any prior notice. Those decisions are distinguishable from the present circumstances. *See Herrera v. Blanche*, No. C26-1684-MLP, 2026 WL 1733493, at *2 (W.D. Wash. Jun. 16, 2026) ("Petitioner was not released from custody and accordingly did not acquire a protected liberty interest of this kind"); *Trujillo Vasquez v. Scott*, 2:26-cv-01742-LK, Dkt. No. 12 at 7 (W.D. Wash. Aug. 3, 2026) (Petitioner "does not list any procedure that was due but withheld from him").

[5] Petitioner also argues this case falls within a gap left open in *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022), asserting that *Rodriguez Diaz* does not foreclose an as-applied challenge to § 1226(a). He identifies that *Rodriguez Diaz* considered the constitutionality of the procedures actually accorded under § 1226(a), "including access to review before an Immigration Judge," which he asserts he has never been afforded. (Dkt. No. 7 at 6.) However, the petitioner in *Rodriguez Diaz* requested a bond hearing. 53 F.4th at 1193. Petitioner, who was similarly able to request a bond hearing, did not. Petitioner's decision not to avail himself of certain procedural rights available under § 1226(a) does not make either the statute or his detention unconstitutional.

Court should require Petitioner to exhaust his administrative remedies before seeking habeas relief.  (Dkt. No. 4 at 6.)  Exhaustion of administrative remedies is prudential rather than jurisdictional and may be required where:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003) (quoting *Montes v. Thornburgh*, 919 F.2d 531, 537 (9th Cir. 1990)).  Exceptions to the exhaustion requirement include "situations . . . where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void."  *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981).  Similarly, the exhaustion requirement is waived where the petitioner is "challenging issues other than the BIA's ruling on removability."  *Laing v. Ashcroft*, 370 F.3d 994, 1001 (9th Cir. 2004) (citing *Marquez v. INS*, 346 F.3d 892 (9th Cir. 2003)).

Here, all three factors weigh against Petitioner.  First, the agency and not this Court is responsible for adjudicating Petitioner's bond redetermination requests.  Second, ordering Petitioner be granted a bond hearing encourages petitioners to come before this Court rather than seek a bond redetermination in the first instance.  Third, Petitioner identifies no basis to conclude he would be provided a constitutionally deficient bond hearing once requested.  Accordingly, Petitioner must exhaust his administrative remedies before seeking relief from this Court.

### IV   ORDER

For the reasons articulated herein, Petitioner's petition for writ of habeas corpus (Dkt. No. 1) is DENIED without prejudice.

Dated this 12th day of August, 2026.

David G. Estudillo
United States District Judge

ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABAEAS CORPUS (DKT. NO. 1) - 8